UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CLAUDIA E. BRICKER, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:11-cv-00871-MJD-WTL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

# Order

Plaintiff Claudia Bricker requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth, the Court **REMANDS** the case for further proceedings consistent with this opinion.

## I. Background

### A. Procedural History

On November 6, 2007, Bricker filed applications for DIB and SSI, alleging disability beginning on June 30, 2007. On March 17, 2008, the claims were initially denied and on May 20, 2008, the claims were denied upon reconsideration. Thereafter, Bricker requested a hearing, which was held before Administrative Law Judge ("ALJ") Stephen E. Davis on February 18, 2010. On August 23, 2010, the ALJ denied her applications. Bricker requested review of the ALJ's decision by the Appeals Council. On May 16, 2011, the Appeals Council affirmed the

ALJ's decision.  On June 29, 2011, Bricker filed this timely appeal requesting review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## B.  Factual Background

Bricker's past relevant work includes work as a cashier and a receptionist.  Bricker's last job ended in June 2007. Bricker alleges that she is totally disabled because of both physical and mental impairments.  Because Bricker does not appeal the ALJ's decision with regard to her physical impairments, the Court will focus on Bricker's mental impairments, specifically, her depression and anxiety.

Bricker alleges to have suffered from depression and anxiety most of her life.  Her depression got worse after the death of her third husband in 2007.  For a period of time, Bricker was homeless and lived in her van.  Bricker's friend Mary Brown ("Brown") allowed Bricker to live with her for a time; however, Brown asked Bricker to leave because Bricker cried all of the time.   Bricker alleges that, at times, she has difficulty getting out of bed and cries uncontrollably due to her depression, which is part of the reason she cannot work.  Additionally, Bricker suffers from social anxiety and avoids groups of people and going out in public.

On December 7, 2007, Bricker underwent a consultative examination, where she primarily complained that her depression prevented her from working on a predictable basis.  [R. 203].  The examiner noted that Bricker displayed adequate attention span and memory function as needed for an employment situation.  [R. 204].  The examiner then concluded that it is "impossible for the examiner to document or authenticate the claimant's alleged lack of employability because of chronic depression."  [R. 206].

On December13, 2007, consultative examiner Dr. Suzanne Leiphart examined Bricker.  Dr. Leiphart diagnosed Bricker with the following: anxiety disorder; depressive disorder with

2

bipolar features; cognitive disorder; and personality disorder features. [R. 210]. Dr. Leiphart noted that Bricker displayed a negative attitude and poor concentration throughout most of the examination and that Bricker presented information confusingly and not in sequential order. [R. 207]. Dr. Leiphart concluded that Bricker's judgment and insight were impaired and that she did not appear capable of managing her funds. [R. 209; 210]. Dr. Leiphart assigned Bricker a Global Assessment of Function ("GAF") score of fifty, indicating serious symptoms or serious limitations in functioning. [R. 210].

On February 14, 2008, Bricker completed the Wechsler Memory Scale III testing ("WMS"). Bricker's scores ranged from the borderline (one of eight categories) and low average (five of eight categories) to the average range (two of eight categories). Overall, the results indicated that Bricker did not have significant short-term memory problems. [R. 224].

On March 17, 2008, Dr. B. Randall Horton completed a mental residual functional assessment, finding Bricker moderately limited in the following mental activities:

- ability to understand and remember detailed instructions,
- ability to carry out detailed instructions,
- ability to maintain attention and concentration for extended periods,
- ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
- ability to accept instructions and respond to criticism from supervisors
- ability to travel in unfamiliar places or use public transportation

[R. 226-27]. In the remaining mental activities, Dr. Horton found Bricker not significantly limited. Overall, Dr. Horton concluded that Bricker's mental impairments were severe, but that

she remained capable of remembering and performing simple, repetitive tasks. [R. 228]. Additionally, two nonexamining Disability Determination Service ("DDS") clinicians, Dr. Sands and Dr. Lavallo, completed Disability Determination or Transmittal Forms ("DDT") that indicated Bricker did not meet or equal a listing. [R. 47-50].

## II. Disability and Standard of Review

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can

still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p) At step four, if the claimant is able to perform her past relevant work, she is not disabled.  20 C.F.R. 416.920(a)(4)(iv).  At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred.  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  Further, this court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, …or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

## III. The ALJ's Decision

At step one, the ALJ found that Bricker had not engaged in substantial gainful employment since the alleged onset date. [R. 11]. At step two, the ALJ found that Bricker had the following combination of impairments: "degenerative changes, lumbar spine; high blood pressure; obesity; degenerative changes, right knee." [*Id.*]. The ALJ found that Bricker's mental impairments were not severe. [*Id.* at 13]. At step three, the ALJ found that Bricker did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [*Id.*]. The ALJ found that Bricker had the residual functional capacity ("RFC") to perform light work. [*Id.* at 13-14]. At step four, the ALJ found that Bricker was unable to perform any past relevant work. [*Id.* at 15]. At step five, the ALJ found that Bricker could perform jobs in the national economy and therefore she was not disabled. [*Id.* at 16].

## IV. Discussion

Bricker first argues that the ALJ's denial decision is not supported by substantial evidence. Next, Bricker argues that the ALJ's credibility determination is patently erroneous. Lastly, Bricker argues that substantial evidence fails to support the ALJ's step five determination. The Court will address each argument in turn.

**A. Substantial Evidence**

Specifically, Bricker alleges that substantial evidence fails to support the ALJ's denial decision because the ALJ: (1) failed to cite to Listing 12.04; (2) ignored the evidence that showed Bricker met Listing 12.04; (3) failed to summon a medical advisor;[1] and (4) made a

---

[1] Contrary to Bricker's argument, the ALJ was not required to summon a medical advisor. Under Social Security Ruling ("SSR") 96-6p, a signature of a state agency medical or psychological consultant on a DDT form "ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of

plainly erroneous decision, because he substituted his opinions for the opinions of Bricker's treating and examining physicians.

### 1. Failure to Cite to Listing 12.04

An ALJ's failure to refer to a relevant listing does not, by itself, require reversal. *Knox v. Astrue*, 572 F. Supp. 2d 926, 935 (7th Cir. 2008) (citing *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004)). However, a failure to mention a specific listing "'combined with a perfunctory analysis may require a remand.'" *Id.* (quoting *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006)). Such is the case here.

In evaluating mental impairments, if the claimant has a medically determinable mental impairment, the ALJ must rate the degree of functional limitation in four broad areas of functioning known as the paragraph B criteria. *Craft*, 539 F.3d at 674 (citing 20 CFR § 404.1520a(c)(3)). These areas of functioning include activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* If—as is the case here—the ALJ rates the first three as mild or none and there are no episodes of decompensation, the impairment is not considered severe at step two. *Id.* at 675 (citing § 404.1520a(d)(1)). Otherwise, the impairment is considered severe, requiring the ALJ to move to step three and determine whether the impairment meets or equals any listing. *Id.* (citing § 404.1520a(d)(2)).

Most of the ALJ's discussion of Bricker's mental impairments occurred in the ALJ's step two analysis, where he found that Bricker's mental impairments were not severe. [R. 13]. In reaching this finding, the ALJ did not adopt the DDS clinicians' opinions who found Bricker's mental impairments were severe. [*Id.*]. Instead, the ALJ based his finding on what he described

---

administrative review." SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996). Here, Dr. Sands and Dr. Lavallo completed DDT forms that indicated Bricker did not meet or equal a Listing. [R. 47-50].

as the totality of the record that did not provide convincing evidence that Bricker's functionality is meaningfully compromised due to her mental status. [*Id.*]. As discussed below, however, the ALJ's analysis fails to build a logical bridge between the facts of the case and the outcome.

The Commissioner argues that the ALJ did consider the elements of listing 12.04 even if he did not explicitly refer to the relevant listing. [Dkt. 21 at 5]. To meet listing 12.04, Bricker had to satisfy the criteria in both paragraphs A (a set of medical findings) and B (impairment related functional limitations) of listing 12.04. In analyzing the severity of Bricker's mental impairments, the ALJ discussed the paragraph B criteria, which require Bricker to have marked limitation in at least two of the first three broad areas of functioning. The ALJ found that Bricker had mild limitations in all three of these functional areas. [R. 13]. In so finding, the ALJ not only found that Bricker's mental impairments were not severe, but he also found that Bricker could not meet listing 12.04 because she could not satisfy the paragraph B criteria. The ALJ's analysis, however, is built upon a house of cards.

### 2. Ignoring Evidence that Supports Bricker's claim

In finding that Bricker's mental impairments were not severe and that Bricker did not satisfy the paragraph B criteria, the ALJ stated that the "[e]vidence supplied subsequent to the DDS determination, reflects general stabilization in the claimant's emotional status." [*Id.*]. The ALJ cites to no specific evidence in the record, but the Commissioner points the Court to progress notes from Midtown Community Health Center dated January 18, 2009, where Bricker's symptoms were described as mild. [Dkt. 21 at 5 (citing R. 301)]. However, any "stabilization" appears short-lived; a mental health care note dated October 14, 2009 described Bricker's prognosis as "not good," noting that Bricker was persistently irritable and depressed, had "much anxiety" around others, and frequent crying, which rendered her unable to work. [R.

8

312]. The ALJ failed to discuss this piece of relevant evidence that significantly undercuts his reasoning for rejecting the DDS clinicians' determination that Bricker had severe mental impairments.

The ALJ also ignored relevant evidence in finding that Bricker had only mild limitations in the paragraph B areas of functioning. In the area of social functioning, the ALJ noted that Bricker "is somewhat ill-at-ease around crowds." [R. 13]. This statement is at odds with medical evidence that Bricker had "much anxiety" around others. [*Id.* at 312]. The ALJ's analysis fails to resolve this conflict. In the area of concentration, persistence, or pace, the ALJ noted that Bricker "attends to her personal finances." This statement is at odds with Dr. Leiphart's conclusion that Bricker "did not appear capable of managing her funds." [*Id.* at 210]. Again, the ALJ fails to resolve this conflict.

In fact, while briefly discussing Dr. Leiphart's examination, the ALJ failed to determine what weight to give her conclusions and fails to discuss Bricker's assigned GAF score of fifty, which indicated that Bricker had serious symptoms or serious limitations in functioning. The Commissioner argues that the inclusion of the GAF score in the ALJ's analysis would not compel a particular conclusion because GAF scores measure both severity of symptoms and functional level with the final score reflecting the worse of the two. [Dkt. 21 at 8]. That argument misses the point. The ALJ must consider all of the relevant evidence. *Herron*, 19 F.3d at 333. A GAF score of fifty is an indication that Bricker had either serious symptoms or serious limitations in functioning. In either case, such evidence is directly relevant to an analysis of whether Bricker is disabled. From the ALJ's analysis, the Court cannot determine whether or not the ALJ considered this relevant piece of evidence.

In sum, the ALJ has based his findings on an incomplete assessment of the evidence. As such, the ALJ has failed to build a logical bridge between the facts and his findings. Upon remand, the ALJ should consider all of the relevant evidence.

**B. Credibility Determinations**

Next, Bricker challenges the ALJ's credibility assessment. Because "[a]n ALJ is in the best position to determine the credibility of witnesses, [the Court will] review that determination deferentially." *Craft,* 539 F.3d at 678. Accordingly, courts will generally not overturn an ALJ's credibility determination unless it is patently wrong. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). However, the ALJ must support his credibility findings with substantial evidence and must explain his decision in a way that allows a court to determine whether the ALJ reached the decision in a rational manner, logically based on specific findings and the evidence. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

The ALJ found Bricker's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the above residual functional capacity." [R. 14]. The ALJ failed to discuss which of Bricker's statements he found not credible and he failed to specify what weight he gave to Bricker's statements. *See Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011). Furthermore, noticeably absent from the ALJ's credibility determination is any discussion of Bricker's statements regarding her anxiety around others, which is well documented in the medical records.

The ALJ failed to discuss Brown's credibility entirely. Brown's testimony, if believed, offers a great deal of support for Bricker's claims of depression and anxiety. Because of the ALJ's failure to make a credibility determination with regard to Brown's statements, this Court

10

has no way to know whether the ALJ properly considered them.  For these reasons, the Court finds that the ALJ has not explained his decision in a way that allows this Court to conclude that he reached his credibility determinations in a rational manner, logically based on specific findings and the evidence.

**C. The ALJ's Step Five Determination**

Lastly, Bricker challenges the ALJ's step five determination that Bricker could perform a range of jobs that exists in significant numbers in the national economy.  Bricker argues that the ALJ relied solely on the Medical-Vocational Guidelines in which mental illness limitations are not considered.  The Grid directs a finding of "disabled" or "not disabled" based on common combinations of characteristics, but the Grid does not account for nonexertional such as Bricker's depression and anxiety.  *Villano v. Astrue*, 556 F.3d 558, 564 (7th Cir. 2009).  In cases "where a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert."  *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (citing *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)).

To make an accurate determination at step five, the ALJ must have properly assessed Bricker's RFC.  An RFC must consider all of a claimant's medically determinable impairments, both physical and mental, even those not considered severe.  *Craft*, 539 F.3d at 676.  An ALJ bases an RFC upon medical evidence in the record and other evidence such as the claimant's testimony or other witnesses' testimony.  *Id.*  Here, the ALJ failed to properly consider all of the evidence of Bricker's mental impairments and what impact those impairments might have on Bricker's ability to work.  As an example, the ALJ does not discuss Bricker's diagnosed social anxiety disorder or consider whether limiting Bricker's contact with the public might be

11

necessary. Furthermore, the ALJ did not properly consider the statements of Bricker and Brown. Accordingly, upon remand, the ALJ should consider all of Bricker's medically determinable impairments in determining her RFC and if, at that time, Bricker's nonexertional limitations might significantly limit her range of work, the ALJ should consult a vocational expert.

## V. Conclusion

For the above stated reasons, the Court **REMANDS** the case for further proceedings consistent with this opinion.

Dated:       05/08/2012

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution List:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com